UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROMONA M. BOOKER,

    Plaintiff,

v.                                                Case No: 6:16-cv-2247-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff Romona M. Booker appeals to this Court from a final decision of Defendant, the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. §416. After due consideration, the Commissioner's final decision is **reversed and this case is remanded**.

## Background

On February 2, 2013, Plaintiff applied for benefits, alleging disability arising from a variety of impairments, including major depressive disorder ("MDD"), psychosocial disorder, panic and anxiety attacks, post-traumatic stress disorder ("PTSD"), an eating disorder, sleep disorder, chronic asthma, severe chondromalysia, and fibrocystic breast disease (Tr. 229). She was 47 years old on her June 1, 2010 alleged onset date (Tr. 211), with past relevant work experience as a Project Manager/CAD designer and Project Coordinator/Property Manager at various

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.

properties (Tr. 88-89, 236). Her claims were denied at the initial and reconsideration levels (Tr. 110, 127, 130-31, 137-39, 269, 286), and Plaintiff requested and received an administrative hearing before an administrative law judge ("ALJ") (Tr. 34-97). The ALJ rendered an unfavorable decision on June 15, 2015 (Tr. 6-28). On October 31, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Accordingly, the ALJ's decision became the Commissioner's final decision and this appeal timely followed (Doc. 1).

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process which appears at 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged

onset date (Tr. 11).[2] At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "mild degenerative disc disease at L5-S1; deformity of right small finger with surgery in 2014; asthma/chronic obstructive pulmonary disease (COPD); chronic bilateral joint disease/chondromalacia patella; post-traumatic stress disorder (PTSD) and panic attacks, status post sexual trauma; major depression; and history of marijuana and alcohol abuse" (Tr. 11). The ALJ held that claimant's history of cysts in her breasts and a sleep disorder were not severe (Tr. 11-13).

At step three, the ALJ found that, through her date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr.13). Next, the ALJ decided that, through her date last insured, Plaintiff had the residual functional capacity to perform a limited range of light work, as defined in 20 CFR 404.1567(b) (Tr. 15). The ALJ said:

> Specifically, the claimant has the following exertional and non-exertional limitations: she can lift/carry no more than 20 pounds occasionally and 10 pounds frequently; no standing/walking more than six hours out of an eight hour day and for no more than 30 minutes at one time; no sitting more than six hours out of an eight hour day and for no more than one hour at a time; can do unlimited pushing/pulling up to the exertional limitations; no more than frequent balancing; no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps or stairs; no climbing ladders, ropes, or scaffolds; no work in areas of concentrates dusts, fumes, gases, or other pulmonary irritants; no work around dangerous, moving machinery or unprotected heights; no more than simple, routine work; can maintain attention and concentration for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-workers or supervisors but no contact with the general public; no more than occasional changes to the workplace setting.

---

[2] Plaintiff's disability insured status expired on December 31, 2014 (Tr. 226).

(Tr. 15).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 26). But, based on the testimony of a vocational expert, the ALJ determined at step five that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (Tr. 26-27). Consequently, the ALJ concluded that Plaintiff was not under a disability from her alleged onset date through her date last insured (Tr. 27).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater,

67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ erred in weighing the medical opinions of record and in evaluating Plaintiff's allegations of disabling limitations. On review, I find remand for additional consideration and explanation is required.

### Evaluation of Medical Opinions

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c). All opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Substantial weight must be given to the opinions, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

Plaintiff, a veteran of the United States Air Force, was treated primarily at the VA clinic for multiple complaints, including complaints of PTSD and MDD as well as bilateral knee pain. She contends that the ALJ failed to properly evaluate the medical opinions of her treating psychiatrist and psychologist.

The lengthy record includes numerous visits to the VA for mental health (and other) treatment.[3] In the administrative decision, the ALJ addressed the mental

---

[3] In the interests of privacy and brevity, I need not detail the particular traumas which form the basis of Plaintiff's PTSD and MDD. What is significant is that the VA found Plaintiff's PTSD was 100% disabling, as of January 31, 2013 (Tr. 295-296).

- 6 -

health records and opinions of Plaintiff's treating psychiatrist Lante Quinones, M.D. and treating psychologist Camillia Westwell, Psy.D., finding, in part:

> The claimant's treatment provider has opined GAF scores ranging from 44 through 53 over the past few years (Exhibits IF page 61, 2F page 128, and 4F pages 56, 61, and 90).
>
> The undersigned notes that a GAF of 41-50 corresponds to serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). A GAF of 51-60 corresponds to moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> As such, the undersigned gives little weight to these GAF findings. **Ms. Booker has not displayed difficulty functioning in these domains to the level indicated. In addition, during her routine office visits with the VAMC she has displayed normal mood, affect, judgment, and memory**.
>
> L. Quinones, M.D. from the VAMC opined in May 2014 that the claimant had significant cognitive problems-recall, attention, and concentration. The examiner opined this would cause difficulty with work and social settings as Ms. Booker would have mood swings, paranoia, and severe anxiety, which would impact her work abilities. Dr. Quinones found limited abilities in social environments as the claimant demonstrated guarded and suspicious behaviors. The examiner found Ms. Booker had no useful ability to maintain attention for two hour segments; to work in coordination with or proximity to others without being unduly distracted by them; to complete a normal workday and workweek without interruptions form psychologically based symptoms; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; to deal with normal work stress; to understand and remember detailed instructions; to carry out detail instructions; to set realistic goals or make plans independently of others; to deal with stress of semiskilled and skilled work and to use public

> transportation. Dr. Quinones also opined that the claimant would miss more than four days a month but could manage benefits if awarded (Exhibit 7F).
>
> Camillia Westwell, Psy.D. noted in May 2014 that the claimant's medications which were prescribed for mood created serious issues with reliability, alertness, focus and efficiency. She opined that Ms. Booker's mood symptoms impaired her ability to handle people and focus and to handle simple stress and activities of daily living. The examiner opined that the cognitive symptoms would impact the claimant's ability to remember, concentrate, pay attention and would cause cognitive clouding (Exhibit 8F). The examiner found moderate symptoms impeding ability to recall detail, set and carry out basic goals, and communicate as seriously when needed. Dr. Westwell found Ms. Booker was a severely depressed female with anxiety reactions and phobic responses that were stopping her from doing regular tasks. She noted that there were days where hygiene was lacking and the claimant remained in bed, at which time she was highly unreliable (Exhibit 8F).
>
> In this case, there is a lack of **objective, clinical, or laboratory findings** to support the severe degree of limitations that Dr. Quinones and Dr. Westwell finds. **The medical record reveals no significant evidence of compromise that would affect the claimant's ability to function to the degree as indicated. The examiners do not relate their opinions to any specific findings and their opinions are not supported by reports**, which indicate only routine outpatient care, with sporadic use of prescribed medication. In addition, **their assessments are inconsistent with the claimant's self-reported activities of daily living such as cleaning or providing care for her grandmother**. The undersigned, therefore, gives little weight to Dr. Quinones' and Dr. Westwell's assessments of the claimant's residual functional capacity.

(Tr. 24-25 –emphasis added). Plaintiff claims that the reasons offered for discrediting the opinions of these treating providers are inadequate and the ALJ's evaluation is not supported by substantial evidence. I agree.

The ALJ found there was a lack of "objective, clinical, or laboratory findings" to support the severe limitations opined by Drs. Quinones and Westwell (Tr. 25). Given

- 8 -

the nature of mental illness, I am at a loss as to what kind of "laboratory finding" the ALJ is looking for here. As for objective or clinical findings, Plaintiff was administered the MMPI-2, which was interpreted by her provider as suggestive for PTSD (Tr. 452). The ALJ found Plaintiff's PTSD to be a severe impairment at step two, so I assume he accepted the result of this objectively administered test. The record also includes GAF scores which appear to be "clinical findings," yet the ALJ discredited these as unsupported because "during [Plaintiff's] routine office visits with the VAMC she has displayed normal mood, affect, judgment, and memory." While the treatment records do show that Plaintiff *sometimes* presented with normal mood, affect, judgment, and memory, the records also include examinations where Plaintiff was found to be dysthymic, with congruent affect (Tr. 356, 325); presented with depressed mood (Tr. 339, 495, 480, 476, 466, 472); with underlying anger and poor insight (Tr. 334); and with a restricted affect (Tr. 472, 495). To the extent the ALJ is implying that the record includes only "normal" mental status examinations, this finding is not supported by substantial evidence.

      The second reason offered by the ALJ to discount the treating providers' opinions is also unsupportable. The ALJ states that: "The medical record reveals no significant evidence of compromise that would affect the claimant's ability to function to the degree as indicated. The examiners do not relate their opinions to any specific findings and their opinions are not supported by reports, which indicate only routine outpatient care, with sporadic use of prescribed medication." In fact, the doctors did relate their opinions to specific findings. Dr. Quinones noted Plaintiff had "significant cognitive problems" with memory, recall, attention and concentration (Tr. 903). Her "significant difficulties cognitively" were noted to impact certain identified work

abilities (Tr. 904). It was explained that Plaintiff would have difficulty with work and social settings "related to mood swings, paranoia, severe anxiety." (Tr. 903). Dr. Quinones explained that the paranoia limits Plaintiff's abilities in social environments (Tr. 904). Dr. Westwell cited medication side effects as well as Plaintiff's ongoing mood and cognitive symptoms, as creating serious issues with reliability, alertness, focus and efficiency (Tr. 905). Dr. Westwell cited severe depression with anxiety reactions and phobic responses to explain Plaintiff's difficulty working at a regular job on a sustained basis (Tr. 906). Dr. Westwell opined both impairments affected Plaintiff's sleep, concentration, and mood (Tr. 454). These are specific findings which are consistent with and supported by the opinion of another VA psychologist, Dr. Stephen Gedo (Tr. 411-421).[4]

As for the "routine outpatient care" and "sporadic use of prescribed medication," it is true, as argued by the Commissioner, that a course of conservative treatment tends to negate a claim of disabling pain (Doc. 14 at 30, citing Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).) The Commissioner fails, however, to explain how this applies to allegedly disabling mental illness; an impairment which, by its nature, does not lend itself to "non-conservative" treatment options such as surgery. Moreover, the treatment notes do not support a finding that Plaintiff's care was "routine." Plaintiff attempted, and failed, a course of Prolonged Exposure psychotherapy (Tr. 357-358, 334, 325) and her prognosis was guarded, due to "complex trauma and her high avoidance" (Tr. 455). As for her medications, Plaintiff and her doctors noted undesirable side effects (Tr. 85, 905) and the medication was

---

[4] Although not argued by the parties, the ALJ failed to consider and weigh Dr. Gedo's opinion as required by Winschel. This opinion should be considered and weighed along with the other opinions, on remand.

- 10 -

considered by Dr. Westwell to be only partially effective (Tr. 455 - "Medication has partial effects …. Cases of complex trauma are difficult to treat.").

Finally, I fail to see the inconsistency between "claimant's self-reported activities of daily living such as cleaning or providing care for her grandmother" and disabling mental limitations due to PTSD and MDD. See, e.g., Mace v. Comm'r, 605 F. App'x 837 (11 Cir. 2015) (noting the episodic nature of mental impairments; remanding where the ALJ failed to consider, as recognized by the regulations, that individuals with chronic mental impairments often structure their lives so as to minimize their stress and reduce their symptoms and signs – and thus such individuals "may be much more impaired for work than" otherwise indicated); Menzie v. Colvin, No. 3:14CV370/LAC/EMT, 2015 WL 5004608, at *10 (N.D. Fla. Aug. 21, 2015) (finding lack of consideration for mercurial nature of mental illness, remanding where the ALJ's decision to discount the opinions of Plaintiff's treating sources "seems derived from an overemphasis on Plaintiff's 'good days' without regard for her 'bad days.'"). The ALJ's stated rationale[5] is insufficient to support discounting the opinions of Plaintiff's treating specialists.

In addition to the mental health providers, Plaintiff argues that the ALJ did not address the opinion of another VA examiner. On July 22, 2011, Sandra Trent, P.A. was asked to evaluate joint injury for purposes of a possible increase in Plaintiff's Veterans Administration disability benefit (Tr. 421). Trent noted Plaintiff had knee

---

[5] In her brief, the Commissioner offers the additional rationale that the record does not support portions of the assessments (Doc. 14 at 30). Because this rationale was not provided by the ALJ, it is not appropriately considered on review. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm "simply because some rationale might have supported the ALJ's conclusion.").

- 11 -

surgery in August 1998 due to degenerative joint disease (Tr. 422). Plaintiff reported that her condition worsened with more pain, less range of motion, difficulty walking, standing, climbing, or squatting (Tr. 422). On exam, Trent noted an antalgic gait and poor propulsion (Tr. 422). There was an abnormal wear pattern on the right shoe and other evidence of abnormal weight bearing (Tr. 423). Trent noted right knee crepitus, tenderness, pain at rest, abnormal motion, clicks or snaps, and grinding. She also noted objective evidence of pain with restricted range of motion and objective evidence of pain with three repetitions of range of motion (Tr. 423). Trent opined Plaintiff's pain moderately affected her doing chores, shopping, recreation, and traveling, and mildly affects her grooming, dressing and driving capabilities (Tr. 425). Trent opined that Plaintiff's pain prevents any exercise and sports activities (Tr. 425). Included in a section entitled "Medical History" is a series of questions which appear to be answered by Trent. Those questions include:

> STANDING LIMITATIONS: Able to stand for 15-30 minutes
>
> FUNCTIONAL LIMITATIONS ON WALKING: Able to walk l/4 mile
>
> ASSISTIVE DEVICES/AIDS:
>
> 1 Cane, Brace
>
> FREQUENCY OF USE: Always

(Tr. 422). Plaintiff argues that Trent's "opinions" concerning standing and walking limitations and the need for a cane and brace were never considered by the ALJ. The Commissioner counters that these are not medical opinions, but a medical history given by Plaintiff and, as the ALJ noted the examination (Tr. 16), there is no error. The issue of whether or not this is a medical opinion is one for the ALJ in the first instance. As the ALJ noted the examination but did not mention the limitations noted,

- 12 -

and remand is required for reconsideration of other medical opinions, it is appropriate for the ALJ to revisit this examination on remand, developing the record further, if necessary.

### Credibility

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

Plaintiff contends that the ALJ did not properly evaluate her allegations of disabling limitations as being consistent with the treatment record and opinions of Dr. Quinones, Dr. Westwell, and Trent. I agree that the failure to properly consider and explain the weight given to the opinions of these providers warrants reconsideration of the ALJ's credibility finding. In determining the credibility of an individual's

statements, "the adjudicator must consider the entire case record." SSR 96-7p.[6] As I have found that additional consideration of the medical record is appropriate, it follows that the credibility finding should be revisited and formulated anew.

## Conclusion

Now, it is **ORDERED** that:

(1) The Commissioner's final decision is **REVERSED AND REMANDED under sentence four of 42 U.S.C. §405(g)** for further proceedings consistent with the findings in this Order.

(2) The Clerk is directed to enter judgment and **CLOSE** the file.

(3) Plaintiff is advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

(4) Plaintiff is directed that upon receipt of such notice, she shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

**DONE** and **ORDERED** in Orlando, Florida on December 14, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

[6] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. The ALJ's administrative decision was rendered in 2015.